

FILED

JUN -3 1999

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL L. POPE,

    Plaintiff,

    v.

SOUTHERN PACIFIC TRANSPORTATION CO., UNION PACIFIC RAILROAD,

    Defendants.

CIV-S-97-0226 DFL GGH

MEMORANDUM OF OPINION AND ORDER

    Plaintiff Michael Pope brings this action against Southern Pacific Transportation Co. and Union Pacific Railroad (collectively referred to as "Southern Pacific"), asserting a claim under the Federal Employer's Liability Act ("FELA"). Pope moves for summary judgment.

I.

    Pope was a conductor and brakeman for Southern Pacific, working primarily out of Redding, California. (Pope Depo. at 24:5-25:9.) On the night of March 17, 1994, he was working with a crew switching train tracks running to local industries between Redding and Anderson, California. (Id. at 123:2-4.) The crew had finished its work and was heading back to Redding when Pope was called upon to "throw" the inside crossover switch from the main

1

97

line at Anderson. (Id. at 123:9-11; 125:1-3.) Pope contends that he injured his back when he pulled on the switch. He further alleges that the switch was not properly maintained and violated applicable federal safety regulations.

Pope filed this action on February 11, 1997, and now moves for summary judgment on the ground that Southern Pacific's violation of safety regulations constitutes negligence per se.

## II.

Pope makes three principal arguments. First, he urges the court not to consider the declarations submitted by the defendants in opposition to his motion for summary judgment. Second, he maintains that there is no triable issue of fact as to whether he was injured as a result of Southern Pacific's negligence. Finally, he argues that his FELA action is timely as a matter of law.

### A.

In opposition to Pope's motion, Southern Pacific relies on the declarations of three witnesses on the issue of track maintenance and safety: Trent Allen, Ken Mahon, and Charles Heimerdinger. Pope asserts, however, that the declarants offer expert opinions. Because Southern Pacific failed to timely identify the declarants as expert witnesses in accordance with the court's scheduling order under Federal Rule of Civil Procedure 16, Pope argues that the court should not consider the declarations.

The court's Pre-trial Scheduling Order provides:

> [D]efendant is ordered to disclose the name and address of any and all expert witnesses that it proposes to call at trial not later than December 11, 1998.
>
> Failure of a party to comply with the disclosure schedule as set forth above in all likelihood will preclude that party from calling the expert witness at the time of trial. An expert witness not appearing on the designation will not be permitted to testify unless the party offering the witness demonstrates: (a) that the necessity for the witness could not have been reasonably anticipated at the time the list was proffered; (b) that the court and opposing counsel were promptly notified upon discovery of the witness; and (c) that the witness was promptly made available for deposition.

(March 30, 1998 Pre-trial Sched. Order.)

As Pope points out, Southern Pacific did not name Allen, Mahon, and Heimerdinger as experts in their Expert Witness Disclosure and Amended Expert Witness Disclosure; indeed, Southern Pacific appears not to have named <u>any</u> experts on the issue of track maintenance and safety. (Pl.'s Exs. 15, 16.) The declarations made by these three witnesses, however, include expert testimony as to the condition and safety of the track on which Pope was injured. Allen concludes based upon his "familiar[ity] with the applicable Federal regulations concerning construction and maintenance of railroad track structures and rail," and a review of photographs, published diagrams, and Union Pacific manuals, that the track was in compliance with federal law. (Allen Decl. ¶¶ 4-8.) He offers no testimony based upon his direct observations or perceptions. Similarly, Heimerdinger offers no percipient witness testimony, but merely concludes based upon his familiarity with Southern Pacific's rules and regulations

3

and his experience as an engineer and claims representative that when a switch "became hard to throw and could not be operated without reasonable force, the operator of the switch was to stop and get help throwing the switch." (Id. ¶¶ 4-5.) And while Mahon states that he has "personal knowledge and familiarity with the track and the switch that are the subject of this litigation," (Mahon Decl. ¶ 3), he goes on to conclude that the track at issue was in compliance with federal regulations based upon his "familiar[ity] with the Federal regulations" and his experience "work[ing] with Federal track inspectors," (id. ¶ 5-6).[1]

The record suggests that Southern Pacific should have anticipated the need to call these witnesses for the purpose of offering expert testimony regarding the safety and condition of the track at issue here. Southern Pacific cannot claim it lacked notice that the condition of the track would be at issue in this case. Pope alleged in his complaint that "the switch was not properly inspected, maintained, aligned and repaired," (Compl. ¶ 8), and in his expert disclosure named "an expert in the areas of railroad safety issues, operating practices and procedures and FRA regulations," (Pl.'s Expert Disc. ¶ 8). Moreover, although Pope

---

[1] Pope also contends that Allen and Mahon gave expert testimony by classifying the track on which Pope was injured under Federal Railroad regulations. (Allen Decl. ¶ 6; Mahon Decl. ¶ 5.) Under the applicable regulations, however, the class of a stretch of railroad track apparently depends upon the speed limit on the track. See 49 C.F.R. § 213.9(a). Because it does not take specialized knowledge to infer the class of track from personal knowledge of the track's speed limit, Allen's classification of the track is probably not expert testimony.

4

offered only boilerplate objections in response to form interrogatories that clearly and specifically asked him to "state the rule[s] and regulation[s] upon which his FELA claim was based," (Def.'s First Set of Interrogs. at 7), his responses to the defendant's special interrogatories were more forthcoming. Pope stated, for example, that "[t]he switch was not in good alignment, was not level so that the switch points would ride evenly across each switch plate, and was not sufficiently lubricated." (Pl.'s Resp. to Def.'s First Set of Special Interrogs. at 8.) Even if this response did not specifically list the particular regulations at issue, surely Southern Pacific knew that the handful of regulations pertaining to switches were implicated by such a response. In sum, Southern Pacific cannot now ascribe its failure to list track and switch experts in its expert disclosure to some default or deception by plaintiff.

For these reasons, the court declines to consider the affidavits of Allen, Heimerdinger, and Mahon in ruling on Pope's motion for summary judgment.

B.

Pope argues that Southern Pacific's failure adequately to maintain the switch that injured him violates federal railroad regulations and constitutes negligence per se. Pope further asserts that there is no triable issue of fact as to contributory negligence and causation.

1. <u>Negligence per se</u>

Under FELA, "conduct is deemed negligent per se if it violates a statute or regulation and if it 'contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." Morant v. Long Island R.R., 66 F.3d 518, 522 (2d Cir. 1995) (citation and internal quotations omitted); see also Ries v. National R.R. Passenger Corp., 960 F.2d 1156, 1159 (9th Cir. 1992) ("It is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry."). Pope contends that Southern Pacific violated two federal regulations governing track safety as a matter of law: 49 C.F.R. § 213.133(a) and 49 C.F.R. § 213.135.[2]

49 C.F.R. § 213.133(a) provides that "[i]n turnouts and track crossings, the fastenings shall be intact and maintained so as to keep the components securely in place. Also, each switch, frog, and guard rail shall be kept free of obstructions that may interfere with the passage of wheels." Pope has submitted a declaration and deposition testimony from his designated expert witness on track maintenance and safety issues, Lupe Vallejo.

---

[2] Pope also maintains that Southern Pacific violated 49 C.F.R. § 213.133(b), which provides in relevant part that "[c]lasses 3 through 5 track shall be equipped with rail anchoring through and on each side of track crossings and turnouts, to restrain rail movement affect the position of switch points and frogs." The court need not address this issue, however, because Pope has established that Southern Pacific was negligent per se based upon its violations of 49 C.F.R. § 213.133(a) and 49 C.F.R. § 213.135(e).

6

According to Vallejo's declaration and curriculum vitae, he has extensive knowledge of the federal regulations governing railroad track construction and has experience working as a track foreman, an inspector for the Federal Railroad Administration, and a consultant on issues of railroad safety and operations. (Vallejo Decl. ¶¶ 2, 4, 7, 8; Vallejo Depo. Ex. 2.) Vallejo determined based upon a review of photographs and written statements that the switch that injured Pope was not securely fastened within the meaning of this regulation. (Vallejo Decl. ¶ 10.) Referring to a photograph exhibit, Vallejo explained:

> [T]here's rail movement going on. That's why you get this type of defect when the brace is hitting the rail.
>
> * * *
>
> [I]f you have this kind of a problem, it's because your switch for one thing is not adjusted properly, and also that your rail needs anchors on there to stop the movement. So you have two options. You can either put the rail anchors on or keep adjusting this switch so it doesn't bind. This will cause binding of the switch and make it hard to move back and forth.

(Vallejo Depo. at 48:19-49:24.) According to Vallejo, Southern Pacific failed to pursue either remedy, opting instead for a "quick repair". (Id. at 50:13-52:9.) The only contrary evidence submitted by Southern Pacific is Allen's declaration, which the court has declined to consider. Because the evidence submitted by Pope is uncontroverted, the only reasonable inference from the record is that Southern Pacific failed to ensure that the switch components were "maintained so as to keep the components securely

7

in place."

49 C.F.R. § 213.135(e) provides that "[e]ach switch stand and connecting rod shall be securely fastened and operable without excessive lost motion." Pope relies on Vallejo's conclusion that the switch at issue here "had insufficient anchorage to restrain rail movement and had missing rail anchors such that the switch was not maintained so as to keep the component parts securely in place." (Vallejo Decl. ¶ 10.) Vallejo further explained his finding of a 213.135(e) violation in his deposition testimony:

> Counsel:
> Okay. Now, is there anything in -- before I move on here, is 49 C.F.R. 213.135 listed on Exhibit 3 here, what -- is there any particular picture that matches the conditions that you are referring to in that code section?
>
> Vallejo:
> There again, we're talking about this connecting rod. The connecting rod is coming here to the number two rod. And the way that everything looks right here and looking at the -- where this handle was bent before tells me that it's -- it wasn't secure, securely fastened, everything, to make it operable so that you could just get it and in one motion where you move your switch points over.

(Vallejo Depo. at 56:16-57:3.) Because the only contrary evidence submitted by Southern Pacific is Allen's inadmissible expert declaration, a jury could only reasonably conclude based on this record that the switch stand and connecting rod were not securely fastened in accordance with the regulation.

Summary judgment is therefore granted for Pope with respect to Southern Pacific's violation of 49 C.F.R. § 213.133(a) and 49 C.F.R. § 135.

## 2. Contributory Negligence

Under FELA, "no . . . employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53; see also Ries, 960 F.2d at 1159 ("If a statutory duty is violated by the employer, the employee will recover all of her damages under the FELA even though the employee is contributorily negligent."). The federal courts have interpreted this provision to embrace violations of safety regulations as well as statutory violations. See Morant v. Long Island R.R., 66 F.3d 518, 522 (2d Cir. 1995) ("Under FELA, conduct is deemed negligent per se if it violates a statute or regulation and if it contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent.") (citation and internal quotations omitted). Because Pope has established that Southern Pacific violated federal railroad regulations as a matter of law, summary judgment is granted for Pope on Southern Pacific's contributory negligence defense.

## 3. Causation

Pope contends that there is no genuine issue of material fact as to whether his injury was caused by his attempt to throw the stubborn switch on March 17, 1994.

"It is well established that FELA does not provide worker's

9

compensation, but that liability is based upon negligence having a causal connection with the injury." Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 606 (9th Cir. 1993). A plaintiff need not show that the defendant's conduct was the proximate cause of his injury to be entitled to an award under FELA; "[l]iability may be found where employer negligence played any part, even the slightest, in producing the injury." Armstrong v. Burlington North. R.R. Co., 139 F.3d 1277, 1278 (9th Cir. 1998).

Pope claims that he immediately felt a sharp pain in his lower back when he tried to pull the switch, (Pope Depo. at 35:21-37:13, 143:2-5), and that he did not have serious back problems prior to this incident, (id. at 35:21-24). Moreover, Pope has submitted expert testimony concluding that this incident was a cause of his injury, even if the "cumulative trauma" of Pope's "switch throws over his railroad career" was also a factor. (Dischler Depo. at 65:15-23.)

Southern Pacific counters with expert testimony that "the forces and postures used in throwing the switch in question could not have caused the severe degenerative condition that Mr. Pope was diagnosed with following the March 17, 1994 incident." (Pizialli Decl. ¶ 10.) Southern Pacific's expert explains that "[e]ven assuming that Mr. Pope indeed did not experience any symptoms of his diagnosed degenerative condition until the March 17, 1994 rail switch event, it does not automatically follow that the March 17, 1994 event was the cause of the injury or condition

complained of." (Id. ¶ 12.) This testimony does not, however, raise a triable issue of fact as to as to whether Pope's failed attempt to pull the stubborn switch "played any part, even the slightest, in producing the injury," Armstrong, 139 F.3d at 1278. Even if Pope indeed had a degenerative back condition and the March 17, 1994 incident was not the sole case cause of his ultimate injury, that incident was indisputably a but-for cause of the injury, which is all FELA requires.

Nor has Southern Pacific raised a triable issue of fact as to causation by submitting evidence indicating that Pope was contributorily negligent. "Proof that the employee's own negligence was the sole cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or in part to the injury." Walden v. Illinois Central Gulf R.R., 975 F.2d 361, 364 (7th Cir. 1992) (emphasis added); see also Beimert v. Burlington North., Inc., 726 F.2d 412, 414 (8th Cir. 1984) (explaining that "[i]f the plaintiff's negligence was the sole cause, then the violation of the [applicable federal regulation] could not have contributed in whole or in part to the injury"); Maldonado v. Missouri Pac. Ry. Co., 798 F.2d 764, 767 (5th Cir. 1986) ("Of course, because the [statutory] violation [giving rise to FELA liability] must be a causative factor in the plaintiff's injuries, the railroad in appropriate circumstances may raise a sole cause defense."). But a jury could not reasonably conclude based upon the record that Pope's conduct was the only cause of his injury; Pope has

11

established that his attempt to throw the stubborn switch at Anderson was a but-for cause of his injury, and that the switch was difficult to throw because Southern Pacific failed properly to maintain it.

Pope is entitled to summary judgment on the issue of causation.

### C.

A FELA action must be "commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. Pope was injured on March 17, 1994, and brought this action on February 11, 1997, well within the three year limitations period.

Southern Pacific maintains that a triable issue of fact exists as to whether Pope's action is time-barred because there is evidence in the record that Pope's injury was caused by events occurring outside the limitations period. But Pope's FELA action is not predicated on the prior events cited by the defendant; his suit is based solely on the March 17, 1994 incident. Accordingly, his claim is not time-barred

### III.

Pope's motion for summary judgment is GRANTED on the issue of Southern Pacific's liability under FELA.

IT IS SO ORDERED.

Dated: _1 June 1999_ .

_____
DAVID F. LEVI
United States District Judge

```
                    United States District Court                    gm
                              for the
                    Eastern District of California
                           June 3, 1999


                   * * CERTIFICATE OF SERVICE * *

                                              2:97-cv-00226

Pope

   v.

Southern Pacific
```
_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  June 3, 1999, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

    Larry H Lockshin                              HV/DFL
    Larry Lockshin Attorney at Law
    701 University Avenue
    Suite 100
    Sacramento, CA   95825-6511

    Anthony C Diepenbrock
    Diepenbrock and Costa
    455 University Avenue
    Suite 300
    Sacramento, CA   95825

    Donald Sinclair II
    PRO HAC VICE
    Sinclair Jackson Reinhart and Hayden
    One Southpointe Plaza
    400 Southpointe Boulevard
    Suite 120
    Cannonsberg, PA   15317